UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**KATHRYN M. CHASTAIN**,   Case No. 6:14-cv-00704-KI

        Plaintiff,   OPINION AND ORDER

    v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

        Defendant.

Kathryn M. Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Ste. 200
Eugene, OR 97401

    Attorneys for Plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Ave., Ste. 600
Portland, OR 97201-2902

Lisa Goldoftas
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Sve., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Kathryn Chastain brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Chastain protectively filed an application for SSI on July 21, 2010. The application was denied initially and upon reconsideration. After a timely request for a hearing, Chastain, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on October 24, 2012.

On December 7, 2012, the ALJ issued a decision finding Chastain not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on March 7, 2014.

**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

Page 4 - OPINION AND ORDER

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

## THE ALJ'S DECISION

The ALJ identified anxiety and cyclothymic affective disorder[1] as Chastain's severe impairments, but he found these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Given these impairments, the ALJ concluded Chastain could perform the full range of work at all exertional levels, but that she experienced nonexertional limitations. Accordingly, Chastain can perform work requiring commonsense understanding to perform detailed but uninvolved written or oral instructions; she is also able to perform low stress jobs (i.e., not at an assembly-line pace) with few workplace changes, little independent decision-making, and no responsibility for the safety of others. She cannot tolerate contact with the general public, and she is only able to tolerate occasional and superficial contact with coworkers and only occasional contact with supervisors. She is able to work with things rather than people or data.

---

[1] Cyclothymic disorder is a "chronic, fluctuating mood disturbance involving numerous periods of hypomanic symptoms and numerous periods of depressive symptoms. The hypomanic symptoms are of insufficient number, severity, pervasiveness, or duration to meet full criteria for a Manic Episode, and the depressive symptoms are of insufficient number, severity, pervasiveness, or duration to meet full criteria for a Major Depressive Episode." The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 398 (4th ed. 2000) ("DSM-IV-TR").

Page 5 - OPINION AND ORDER

Given this residual functional capacity ("RFC"), the ALJ concluded Chastain could perform work in the national economy, such as sorter, folder, and cleaner. As a result, the ALJ concluded Chastain was not disabled.

## FACTS

Chastain was 33 at the time of the hearing. She has a GED. She testified that she could not work due to panic attacks. She believes she had them biweekly or monthly–she could not remember exactly–back in 2010. Tr. 42. She then testified she thought she would have maybe two or three, at the most, in a month since 2010. Tr. 43. They are brought on by being around people or not completing a task as expected. She manages her environment to keep her anxiety low.

Chastain spends her day at home, playing with her cats, and playing on the computer. She has no friends; all of her friends are online. She takes Lamictal, Lorazepam, and Lexapro, which keep her moods stable. The only places she goes are Safeway once a month, sometimes Wal Mart, and her counselor's office. She lives in an apartment attached to her parents' home, eats with her parents, and her parents have legal guardianship of Chastain's teenaged daughter. Her work experience is limited, with each job lasting only a short time, but she has had jobs in retail, telemarketing, and temporary production work. She last worked in 2001.

## DISCUSSION

I.  <u>Credibility</u>

Chastain challenges the ALJ's credibility analysis. The ALJ found Chastain not fully credible regarding the intensity, persistence or limits caused by her symptoms for three reasons:

inconsistencies in Chastain's reported alcohol and drug use, the possibility of secondary gain, and inconsistent testimony about her panic attacks.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).[2]

Chastain disputes that she made inconsistent statements about alcohol and drug use. I have carefully looked at the record, which reveals the following: from July 15, 2009 until

---

[2] The Commissioner disagrees that the clear and convincing standard controls the analysis, rather than the more deferential regulatory requirement for specific reasons supported by substantial evidence. Def.'s Br. 6, n.3. The Ninth Circuit has rejected her argument. See Burrell v. Colvin, 775 F.3d 1133 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

Page 7 - OPINION AND ORDER

February 22, 2011, Chastain consistently told Christine Menager, PMHNP, that she drank alcohol only rarely and did not use illicit substances. Tr. 247, 236, 229, 225, 268. This history is consistent with what Chastain told Kay Dieter, MD, an examining physician, on October 4, 2010. Chastain reported she rarely drank alcohol. Tr. 216. Dr. Dieter included no reference to marijuana use and there is no support for the notion that Chastain made inconsistent statements at this point.

Chastain's statements about her drug and alcohol use remain consistent in the beginning of May 2011, when Chastain established care with Thea Petersen, MD. At the visit on May 18, Chastain told Dr. Peterson she rarely drank alcohol (maybe 1-2 drinks per year) and denied using any illicit substances. Tr. 350. Similarly, two days later, at her appointment with Menager, she again denied illicit drug use and reported only rare alcohol use. Tr. 266.

In late 2011 and 2012, however, there is sufficient evidence of Chastain's inconsistent statements to support the ALJ's conclusion. Although in October 2011, Chastain continued to report to Menager she had been abstinent from alcohol and drugs, Tr. 278, at her psychological evaluation with Leia Hughey, Ph.D., on December 16, 2011, Chastain told the doctor that she "currently uses marijuana and alcohol on rare occasions." She had enjoyed one drink three days before the evaluation, and she had used marijuana the night before. Chastain told Dr. Hughey that she "generally uses marijuana less often than every two weeks." Tr. 282.[3] This information, together with Chastain's results on the Personality and Assessment Inventory suggesting denial of problems with drinking or drug use, prompted Dr. Hughey to list Rule Out Cannabis-Related

---

[3] I question whether "generally" using marijuana every two weeks is consistent with using it only on "rare occasions."

Disorder NOS as a diagnosis. The doctor also recommended a "thorough drug and alcohol evaluation to clarify how much of a role marijuana may be playing in her current behavioral dysfunction." Tr. 285.

Indeed, a little less than two weeks later, at her December 29, 2011 appointment, Chastain denied illicit drug use when she met with Menager. Tr. 320. Six months later, at her appointment with Dr. Peterson on June 21, 2012, Chastain told Dr. Petersen that she does not use illicit substances. Tr. 341. Chastain reiterated that information when she met with Lisa Lamoreaux, MD, on July 3, 2012. Tr. 362. Yet, just a short time later, on July 5, 2012, in an Updated (Annual) Mental Health Assessment, Corinne Vostal, MS, QMHP and Menager reported Chastain smokes marijuana occasionally to help with pain and anxiety. Tr. 298.

The ALJ concluded these inconsistencies undermined Chastain's credibility. There is sufficient support in the record to justify the ALJ's conclusion and I find it is a clear and convincing reason to question Chastain's testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (inconsistent statements a valid credibility factor).

The ALJ also questioned Chastain's motivation to apply for disability, noting "the medical record . . . raises questions as to the possib[ility] of the claimant seeking disability for secondary gain purposes." Tr. 25. He relied on Chastain's statement to Dr. Dieter that she "needs to have an income" if something happened to her parents, as well as on Chastain's attempt to obtain forgiveness for her student loans by relying on a disability, concluding these incidents "severely limit her credibility." Id.

Chastain's statements certainly raise the possibility of secondary gain, as initially recognized by the ALJ, but his conclusion that her credibility is "severely" undermined is simply

Page 9 - OPINION AND ORDER

not supported by this weak evidence. Burrell, 775 F.3d at 1139-40 (claimant's dislike of work is a weak reason to discredit her testimony about reason for missing work). Unlike Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999), the case on which the Commissioner relies, nothing else in the record suggests Chastain is pretending to be more limited than she is in order to obtain disability benefits. See Tidwell, 161 F.3d at 602 (given daily activities, mild test results, lack of treatment, use of nonprescription medicine to treat pain, more likely that stressful living situation was reason for disability application); see also Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (claimant's "daily activities, his demeanor and appearance at the hearing as well as his well documented motivation to obtain social security benefits" were specific credibility findings supported by the record).

The ALJ also relied on what he perceived as an internal inconsistency in Chastain's testimony about the number of panic attacks she experienced. Chastain testified to experiencing panic attacks monthly in 2010, but represented she could not specifically remember the number, and "since 2010" experiencing two or three panic attacks a month. Tr. 43. Contrary to the ALJ's reading of the testimony, Chastain's testimony is not internally inconsistent because she testified about two different time periods–2010 and "since 2010." It is true Chastain told Dr. Dieter at her appointment in October 2010 that she had one or two panic attacks a year–as opposed to the monthly attacks she testified to–but Chastain candidly testified at the hearing about her difficulty remembering events from two years before.

The Commissioner points out the medical records do not support Chastain's testimony. Chastain reported three to five panic attacks per year in Vostal's evaluation of her in August 2011. Tr. 272. She had no panic attacks in October 2011, only two between October and

Page 10 - OPINION AND ORDER

January 2012, and only one panic attack between January and April 2012. In the meantime, she also noted decreased anxiety levels. Although Chastain argues the frequency of her panic attacks varies, there is no question they never rose to the level of two or three a month as she testified at the hearing. However, other than faulting Chastain for testifying in 2012 contrary to her reports to Dr. Dieter in 2010, the ALJ never connected Chastain's testimony with the medical record. As a result, this is not a specific, clear and convincing reason to support the ALJ's credibility finding. Burrell, 775 F.3d at 1139. The court cannot "affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (internal quotation omitted).

In sum, although the ALJ gave one well-supported reason to question Chastain's credibility, his other reasons are not clear and convincing or supported by substantial evidence in the record. Although generally some unsupported reasons for finding plaintiff's credibility undermined does not make the entire assessment improper, here the ALJ's analysis comes down to a single question of how forthcoming Chastain was about her drug use. I cannot uphold the ALJ's analysis on such a slim basis. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (error is harmless if nondisability determination remains supported despite the error).

II.      Medical Evidence

Chastain challenges the ALJ's treatment of Dr. Hughey's examination findings, as well as the opinions of two non-acceptable medical sources.

A.     Dr. Hughey's Examination Results

Chastain argues the ALJ failed to provide specific and legitimate reasons to reject some of Dr. Hughey's opinions. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (if opinion is contradicted by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record).

Dr. Hughey examined Chastain at the request of Disability Determination Services on December 16, 2011. She noted Chastain answered questions honestly, although her test profile raised "the possibility of denial of problems with drinking or drug use." Tr. 283. In addition, Dr. Hughey raised a concern about Chastain's level of hopelessness and pessimism, which suggested an increased risk Chastain would harm herself, based on her test results. Chastain's intelligence, memory, use of language, visuospatial construction, and attention fell in the normal and average ranges. Dr. Hughey diagnosed Chastain with cyclothymic disorder, rule out cannabis-related disorder, avoidant personality disorder, obesity, IBS, and assigned a Global Assessment of Functioning ("GAF") at about 48.[4] Dr. Hughey recommended psychotherapy to address personality issues, a drug and alcohol evaluation to assess whether and how much marijuana contributes to Chastain's behavior, and suggested Chastain consider moving off of her parents' property. Dr. Hughey noted no cognitive impairment, but believed Chastain to be "unable to initiate and maintain goal directed behavior within a work environment." Tr. 285. Chastain also demonstrates impaired social skills. Dr. Hughey opined Chastain showed moderate to marked

---

[4]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 41 to 50 indicates "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34.

Page 12 - OPINION AND ORDER

impairment in carrying out complex instructions and making judgment on complex work-related decisions, and mild to marked limitations in interacting appropriately with the public, supervisors, and co-workers.  Chastain also demonstrated marked impairment in responding appropriately to usual work situations and to changes in a routine work setting.

The ALJ gave Dr. Hughey's opinion some weight.  He believed the GAF was low because Dr. Hughey accounted for Chastain's lack of employment, living with her parents, and financial problems in the overall score.  In addition, the ALJ questioned Dr. Hughey's finding on Chastain's high suicide risk when no diagnosis or treatment suggested Chastain's depression is so serious.  Finally, the ALJ believed he had accounted for the remainder of Dr. Hughey's concerns in the RFC:  unskilled work accounts for Chastain's impairment in carrying out complex instructions and making judgments; limiting Chastain's interactions with the public, supervisors and coworkers accounts for Chastain's social impairment; and restricting Chastain to working with things rather than people or data ensures simple work without social interaction.

Chastain argues the RFC does not account for Dr. Hughey's conclusion that Chastain sometimes demonstrates a marked limitation in her ability to respond appropriately to supervisors and coworkers.  In addition, the RFC does not address Dr. Hughey's belief that Chastain shows marked impairment in responding appropriately to usual work situations and to changes in a routine work setting, or her conclusions that Chastain could not initiate and maintain goal-directed behavior, tended to misinterpret communications, and appeared emotionally unstable.  Chastain disagrees that the ALJ gave specific and legitimate reasons to disregard these aspects of Dr. Hughey's opinion.

I am not persuaded by the ALJ's conclusion on the low GAF score, but not for the reason Chastain urges. Chastain argues the DSM specifically directs practitioners not to include "impairment in functioning due to physical (or environmental) limitations," implying employment, living, and financial conditions constitute such limitations, contending there is no reason Dr. Hughey would have considered inapplicable factors when instructed not to. See DSM-IV-TR at 34. As the Commissioner notes, however, lack of employment, living with parents, and financial problems are direct evidence of "psychological, social and occupational functioning" and are one component of the GAF score. As the DSM-IV-TR instructs, in order to find an appropriate range for the individual, the practitioner "start[s] at the top level, evaluate[s] each range by asking 'is **either** the individual's symptom severity OR level of functioning worse than what is indicated in the range description?'" DSM-IV-TR 33. The practitioner keeps moving down the scale until the range matches either the patient's symptom severity or the level of functioning, "**whichever is worse**." Id. In short, "the GAF rating is within a particular decile if **either** the symptom severity **or** the level of functioning falls within the range." Id. at 32. Regardless, contrary to the ALJ's implication that Dr. Hughey's opinion is entitled to less weight because she may have considered Chastain's lack of employment, or living and financial situation–characterized by the ALJ as "non-disability factors"–it is apparent from Dr. Hughey's report that she believed Chastain's emotional instability caused these problems. See Tr. 285 ("she appears to be emotionally unstable and unsuccessful overcoming barriers to achieving independence and gainful employment."). If the ALJ disagreed with Dr. Hughey's conclusion, he did not give specific and legitimate reasons supported by substantial evidence. For that reason, the ALJ's rationale is unpersuasive.

Additionally, the ALJ's conclusion that Dr. Hughey's report was entitled to less weight because Chastain's thoughts of suicide are not substantiated by a diagnosis or treatment of severe depression is also unjustified. Importantly, Dr. Hughey's conclusion was based on test results reflecting Chastain's hopelessness, pessimism, and likelihood of impaired judgment, and those test results were valid. Further, Dr. Hughey's report is consistent with Dr. Dieter's notation that Chastain is "chronically suicidal without plan or intent," as well as a repeated diagnosis of major depressive disorder over the years, and Chastain's reports of suicidal ideation. Tr. 215, 256, 229, 256, 272, 322, 296. I underscore that at the time of Dr. Hughey's examination, Chastain reported having suicidal thoughts. Tr. 281 (Dr. Hughey's evaluation on 12/16/2011); Tr. 330 (10/18/2011 appointment describing depression, feeling suicidal, punishing self with no food); Tr. 322 (12/21/2011 appointment reporting feeling suicidal over the weekend).

While the Commissioner contends the ALJ's reasons are immaterial in any event because he accounted for Dr. Hughey's opinion in the RFC, I agree with Chastain that the ALJ's RFC does not accommodate Dr. Hughey's opinion that Chastain has a marked impairment in responding appropriately to usual work situations and to changes in routine work setting. The ALJ's decision to give only "some weight" to Dr. Hughey's opinion is neither supported by specific and legitimate reasons, nor is it harmless error.

B.   Other Source Opinions

Deb Blackstone, LPC, QMHP, completed a Mental Status Report on October 29, 2010 in which she observed Chastain suffers from anxiety and depression, is socially awkward and prone to misunderstanding, has trouble finishing tasks and tends to become overwhelmed and frustrated. Chastain also has trouble switching tasks without advance notice. Tr. 255-61.

Similarly, almost a year later, on October 21, 2011, Menager opined that Chastain had moderate limitations in understanding, remembering and carrying out simple instructions. She thought Chastain exhibited a marked limitation in making judgments on simple work-related decisions, and demonstrated extreme limitations in understanding, remembering, and carrying out complex instructions. She thought Chastain had moderate to marked limitations in interacting with the public, supervisors, and coworkers.

The ALJ noted these opinions did not come from "acceptable" medical sources and he thought Chastain had received care from acceptable medical sources who did not find such severe impairments. Additionally, the ALJ concluded neither Blackstone nor Menager had tested Chastain and their opinions are based on Chastain's subjective complaints.

Both of these sources are considered among the "other sources" listed in the Social Security regulations. See 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1). The ALJ may reject the opinions of such sources by giving reasons that are "germane" to that source. Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir. 2010).

As an initial matter, while it is true Menager and Blackstone are not "acceptable" medical sources, the ALJ was incorrect to suggest Chastain had received mental health care from other treating medical sources. She had not. Nevertheless, the ALJ pointed out these sources were not consistent with other evidence in the record, including Dr. Dieter who performed a consultative examination in October of 2010 and found Chastain capable of performing simple and repetitive tasks, as well as some detailed tasks. SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006) (factors include consistency of opinion with other evidence, support for opinion, explanation for the opinion).

Page 16 - OPINION AND ORDER

The ALJ provided germane reasons for rejecting the opinions of Blackstone and Menager.

III.   Lay Testimony

Chastain's mother supplied information about Chastain's behavior and capacity to work. She reported that the two spend approximately three to four hours a day together, and that Chastain has anxiety, panic attacks, IBS flare ups, and can be uncooperative and angry when she does not take her medication. Chastain spends her day watching television and on her computer. Her clothes are not always clean, she almost always has a strong body odor, and she has to be reminded to bathe. She wears a hat to cover her dirty hair. Chastain's mother cooks for her, and Chastain does not perform chores since she cannot concentrate long enough. Chastain does not handle stress well; she suffers from anxiety, panic attacks and IBS symptoms especially in public places. She is hermit-like, sending text messages to friends and family but never talking on the phone. She can follow written instructions very well. Tr. 163-170

The ALJ simply noted that the testimony reflected only the mother's observations and was not sufficient support to change the RFC. Chastain argues her mother's observations reveal she is more limited than the RFC reflects.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Here, the ALJ properly accounted for Chastain's mother's observations. The ALJ limited Chastain to low stress jobs, such as jobs not performed at an assembly-line pace, with few workplace changes, little independent decision-making, and no responsibility for the safety of others. In addition, the ALJ

Page 17 - OPINION AND ORDER

assured no contact with the general public, only occasional and superficial contact with coworkers, and only occasional contact with supervisors. He limited Chastain to working with things, rather than people or data.

IV.     Remedy

To address the errors the ALJ made with respect to assessing Chastain's credibility as well as Dr. Hughey's evaluation, the court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court has discretion to credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Alternatively, the court can remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021.

Since Dr. Hughey raised serious concerns about Chastain's drug use, and since the ALJ properly questioned Chastain's credibility based on her inconsistent statements about drug use, remand for further proceedings is warranted. Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Accordingly, remand is necessary to determine whether Chastain has a substance abuse disorder, and to undertake a Drug Addiction or Alcoholism ("DAA") analysis as applicable.

Additionally, Chastain's credibility is questionable when there is no support in the medical record for her testimony about the number of panic attacks she has monthly. In addition, the medical record suggests improvement in Chastain's anxiety levels. Other items worthy of consideration include: Chastain volunteering at a computer shop in Junction City in May 2011 (Tr. 266), her concession to Dr. Dieter that she "can complete tasks if she is interested in them" (Tr. 216), the fact that she "did not present as particularly concerned [about not hearing back after applying for a job] and seems content with the current living situation" (Tr. 249), the opinions of Robert Henry, Ph.D. and Joshua J. Boyd, Psy.D., who thought Chastain was "poorly motivated to do whatever she does not wish to do[,]" (Tr. 82, 94-95) and her report to Dr. Hughey that she is unable to work "because her ability to follow through with agreements and assume responsibility is absent." Tr. 282.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

DATED this   10th   day of July, 2015.

  /s/ Garr M. King      
Garr M. King
United States District Judge